UNITED STATES, Appellee,

v.

Henry R. MILLIKEN, Sergeant, U. S. Army, Appellant.

No. 31,884.
CM 429969.

U. S. Court of Military Appeals.

Feb. 20, 1979.

For Appellant—*Captain Johnny D. Mixon* (argued); *Colonel Alton H. Harvey* (on brief); *Captain John C. Carr* (on brief); *Captain William J. Guinan* (on brief).

For Appellee—*Captain Lee D. Schinasi* (argued); *Lieutenant Colonel Donald W. Hansen; Major John T. Sherwood, Jr.* (on brief); *Captain Nancy M. Giorno; Captain Jack M. Hartman; Captain John F. DePue.*

Opinion

COOK, Judge:

The appellant was convicted by a general court-martial of robbery and assault with intent to commit robbery, in violation of Articles 122 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 922 and 934, respectively. He was sentenced to a bad-conduct discharge, forfeiture of $200.00 pay per month for 48 months, confinement at hard labor for 4 years, and reduction to E-1. The findings and sentence were approved by the convening authority and the United States Army Court of Military Review.[1] We granted review to determine whether the trial counsel improperly

---

1. In its original decision, the Court of Military Review returned the record of trial for a new review and action by a different staff judge advocate and convening authority. The sentence was approved by the second convening authority and by the CMR in its second decision.

impeached the appellant with a pretrial statement, whether the appellant was prejudiced by the trial counsel's reference to the deterrence of others in his argument on sentencing, and whether the appellant was denied a speedy review of his case.

The prosecution called the two victims, who testified they were hitchhiking when the appellant offered them a ride, which they accepted. A short time later, the appellant stopped the vehicle he was driving and picked up a Private Horn. Subsequently, Private Horn displayed a firearm, robbed one of the victims, and assaulted the other in an attempt to rob him. Private Horn testified as a Government witness and asserted that he and the appellant had previously planned the robberies.

Chief Warrant Officer Ellis, an agent of the Criminal Investigation Division (CID), testified for the defense that he interviewed the appellant and Private Horn shortly after the incident and Private Horn confessed to the robbery. On cross-examination, Ellis testified as follows:

Q. Mr. Ellis, did you advise both parties of their rights at that time?

A. Yes, sir, I certainly did.

Q. Did both parties waive their right to remain silent?

A. Yes, sir.

Q. Did both waive their right to have counsel?

A. Yes.

Q. Did the accused make a statement?

At this point, the trial defense counsel objected, and although the trial counsel asserted he was attempting to lay a foundation for the possible future use of appellant's pretrial statement, the military judge sustained the defense objection and the cross-examination was terminated.

Subsequently, the appellant testified in his own defense and stated he was unaware of Private Horn's intent to rob the victims, but acknowledged he was with Private Horn when Horn robbed another individual on the day in question.[2] Appellant specifically asserted the following on direct examination:

Q. Now, Sergeant Milliken, the story that you've just told today, is this the truth?

A. Yes, sir, it is true.

Q. Is this the same story that you've told all along?

A. Well, yes, sir, it is; but the only thing I didn't add in about the first robbery. I didn't put that in the first story, sir.

Q. You mean the time when you talked Horn into giving the guy his five dollars back?

A. Right, sir, I didn't put it in the first one.

When asked on cross-examination what he meant by "the same story all along," the appellant replied, "It's the one that I made a confession over at the CID agent, sir."[3] Upon further cross-examination, appellant acknowledged he had "voluntarily" made a pretrial statement wherein, unlike his testimony, he said nothing about the robbery. While the written statement was not admitted into evidence, the trial counsel was permitted to ask the appellant to explain several inconsistencies therein, including the fact he had failed to mention that a robbery had taken place.

On appeal, the appellant submits the failure of the Government to specifically prove the details of the advice which Chief Warrant Officer Ellis gave appellant prior to the execution of the statement, requires reversal. All of us agree that the statement was properly referred to, but we differ as to the reasons; the reason that follows is my own.

■ An accused may consent to the use of a pretrial statement. *United States v. Gustafson*, 17 U.S.C.M.A. 150, 37 C.M.R. 414 (1967). I perceive the circumstances of the case to indicate that the appellant consented to the use of the pretrial statement.

---

2. This robbery, while occurring on the same date as the offenses in question, was a separate and unrelated incident.

3. Although the appellant used the term "confession," the statement was exculpatory.

Indeed, the appellant, on direct examination, stated his testimony was consistent with the "story" he had told prior to trial with one exception. Only then did the trial counsel inquire into the nature of this "story." Thus, the initial reference to the pretrial statement was elicited by the defense. Furthermore, Chief Warrant Officer Ellis had previously testified the appellant had been advised of his "rights" and the appellant acknowledged he had "voluntarily" made a statement. While such general use of the term "rights" and "voluntarily" would not normally satisfy the Government's burden of proving the voluntariness of a pretrial statement, such references further support the conclusion the defense consented to the use of the pretrial statement, not only because portions of the pretrial statement buttressed the appellant's testimony, but because the defense was satisfied the pretrial statement was admissible. Indeed, the trial counsel's attempts to lay a foundation for its admissibility were terminated by a defense objection.

■ Turning now to the propriety of the trial counsel's argument as to the sentence, we note that he made several references to the deterrence of "others." In *United States v. Mosely*, 1 M.J. 350 (C.M.A.1976), and *United States v. Miller*, 1 M.J. 357 (C.M.A.1976), the Court held such argument is improper because it denies an accused an individualized consideration of an appropriate punishment. *See United States v. Varacalle*, 4 M.J. 181 (C.M.A.1978); *United States v. McCree*, 4 M.J. 277, 278 (C.M.A. 1978) (Cook, J., dissenting). However, we conclude no corrective action is required. Appellant's confinement in excess of 3 years and 6 months has been remitted by the Secretary of the Army. In view of the offenses involved and the action of the Secretary, any adverse effects of trial counsel's argument upon the adjudged sentence have been dissipated.

■ Finally, the appellant submits he was denied a speedy review of his case by the convening authority. Appellant's trial terminated on February 23, 1973, and the convening authority's action is dated July 9, 1973. Although the appellant was confined during this period, such restraint occurred prior to the effective date of the presumption established in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). In view of the absence of the *Dunlap* presumption and any errors in the trial proceedings requiring corrective action, we conclude the appellant was not prejudiced. *United States v. Burns*, 2 M.J. 78 (C.M.A. 1976).

The decision of the United States Army Court of Military Review is affirmed.

FLETCHER, Chief Judge (concurring in the result):

I agree with the majority's conclusion as to the post-trial delay question and its disposition as to the issue of the trial counsel's use of an argument relying upon the concept of general deterrence. However, I do so not because of the precedent of *United States v. Mosely*, 1 M.J. 350 (C.M.A.1976); although I concurred in that case when published, I have distinguished my position in *United States v. Varacalle*, 4 M.J. 181 (C.M.A.1978).

■ I concur with Judge Perry's disposition of the first issue.

PERRY, Judge (concurring in the result):

■ I concur in the result reached in the principal opinion, but do not agree that the appellant "consented to the use of the pretrial statement." It is apparent to me that the appellant opened the door when he testified on direct, in response to his attorney:

Q. Is this the same story that you've told all along?

A. Well, yes sir, it is; but the only thing I didn't add in about the first robbery. I didn't put that in the first story, sir.

The cross-examination which followed was proper and resulted in an acknowledgement by the appellant that he had indeed "voluntarily" made a pretrial statement in which he did not mention the first robbery. However, the statement was not admitted. In my view, the Government had every right

to test, through proper cross-examination, the credibility of the appellant's direct testimony that "the only thing I didn't add in about the first robbery."

Article 31(d) of the Uniform Code of Military Justice, 10 U.S.C. § 831(d), is a total proscription against admitting into evidence self-incriminating statements without the proper foundation; there is no exception for impeachment. However, in this case, the statement was not admitted into evidence. Rather, it was adverted to by the appellant in his direct testimony and the prosecuting attorney did not, in my opinion, act improperly in cross-examining the appellant to the limited extent which he did.